**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**SERGE NARCISSE,**

     **Plaintiff,**

**v.**                           **No. 2:24-cv-01313-MLG-JHR**

**VIRGIN GALACTIC and
TALINE COLE,**

     **Defendants.**

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

THIS MATTER comes before the Court on Defendants' Motion to Compel Arbitration and Stay This Case Pending the Outcome of Arbitration [Doc. 20]. Narcisse filed a response in opposition [Doc. 22], and Defendants replied [Doc. 26]. In addition, Narcisse filed Plaintiff's Request for Court Order to Compel Defendants to Produce Validation Records Concerning Mutual Agreement to Arbitrate All Claims Document ("motion to compel discovery") [Doc. 24] and Motion in Response to Defendants' Notice of Completion of Briefing and Request for Court to Consider Defendants' Failure to Authenticate Arbitration Agreement [Doc. 30]. Defendants filed a response to the motion to compel discovery. [Doc. 28]. Presiding District Judge Matthew Garcia referred this case to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) to submit proposed findings and a recommended disposition. [Doc. 35]. I have reviewed the parties' motions, briefing, case record, and applicable law. I RECOMMEND that the Court GRANT Defendants' motion to compel arbitration, DENY Narcisse's motion to compel discovery, and FIND AS MOOT Narcisse's second motion.

**I.      <u>PROCEDURAL BACKGROUND</u>**

Narcisse filed pro se an initial complaint against Defendants on December 31, 2024, and an amended complaint on January 22, 2025, raising claims of race and national origin

discrimination under the Civil Rights Act. [Docs. 1, 5]. Narcisse, a former aircraft technician for Virgin Galactic's[1] spaceport in Las Cruces, alleges his direct supervisor consistently harassed him with insults, vulgar language, yelling, and belittling comments. *See* [Doc. 5, at 8–9]. Narcisse reported the harassment but alleges that no remedial action was taken. *See id.* at 9. Instead, Virgin Galactic assigned him to janitorial tasks. *See id.* at 9–10. In a meeting with management that followed, Narcisse alleges they told him his "difficulties" in his job were a result of his national origin and the fact English was not his first language, causing him to quit. *See id.* at 10. Narcisse alleges he later discovered his white coworkers had received a $10,000 hiring bonus while he received $5,000. *See id.* On April 14, 2025, Defendants filed their motion to compel arbitration. [Doc. 20].

## II.    BRIEFING SUMMARY

Defendants argue that Narcisse executed a binding arbitration agreement with them that applies to his claims of employment harassment and discrimination. [Doc. 20, at 3–5]. Therefore, Defendants assert Narcisse must arbitrate his claims pursuant to the Federal Arbitration Act ("FAA"). *Id.* at 6–8. Defendants submitted the agreement with Narcisse's electronic signature, dated August 23, 2022. [Doc. 20-1, at 1–4]. In addition, Defendants produced other employment policies electronically signed by Narcisse on the same day, his offer of employment, emails sent to Narcisse by Virgin Galactic human resource employees, and the affidavit of Annabel Rey, a human resources employee for Virgin Galactic who attested to the documents' veracity and the company's standard onboarding practices. *Id.* at 5–54.

Narcisse does not dispute that the arbitration agreement is enforceable under the FAA and covers his claims. *See* [Doc. 22, at 1]. Instead, Narcisse asserts he does not recall signing the

---

[1] Narcisse's former employer is officially named Galactic Co., LLC. [Doc. 20, at 1].

agreement and Defendants failed to prove he did because New Mexico law requires electronic signature authentication via "timestamp, sender ID, IP address, audit trail, and hash/checksum." *Id.* at 2. In addition, Narcisse claims the agreement is fraudulent because Virgin Galactic representative Yajaira Rose-Smith's signature does not match her signature on his offer letter, and because he did not begin onboarding until six days after he purportedly signed the arbitration agreement. *Id.* at 3. Alternatively, Narcisse argues: (1) Virgin Galactic improperly signed the agreement 3 years before hiring him; (2) the agreement is unconscionable; and (3) Virgin Galactic waived its right to arbitration by rejecting the Equal Employment Opportunity Commission's ("EEOC") offer to mediate. *Id.* at 2–3. Narcisse's motion to compel discovery requests the Court require Defendants to produce the metadata for his electronic signature. *See* [Doc. 24].

Defendants reply that none of Narcisse's arguments suffice to invalidate the arbitration agreement. [Docs. 26, 28]. Defendants assert this Court found similar evidence could authenticate an electronic signature in a prior decision, making Narcisse's request for metadata immaterial. [Doc. 26, at 2]. Defendants also argue that none of Narcisse's remaining challenges to the arbitration agreement are based in applicable law. *Id.* at 2–3.

### III.     APPLICABLE LAW

The FAA requires enforcement of any agreement to submit to arbitration a controversy relating to a maritime transaction or to a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements," making courts duty-bound to "rigorously" enforce their terms. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (internal quotations omitted). To that end, the FAA extends to the furthest reaches of Congress's ability to regulate interstate commerce. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). However, the FAA makes exceptions to this policy. *See* 9. U.S.C. § 1

(excluding employment contracts for workers in channels of commerce); *see also id.* § 402 (exception for arbitration agreements relating to sexual assault or sexual harassment disputes). Relevant here, an arbitration agreement—and a motion to compel its enforcement—may be challenged "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. Such grounds are generally governed by applicable state law. *First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

A § 2 defense cannot derive from nor depend on the fact that an arbitration agreement is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). In addition, arbitration clauses in contracts are severable. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Consequently, the arbitration clause itself must be invalid or unenforceable to fall outside the FAA's protection. *Id.* Furthermore, if the parties clearly and unmistakably agreed to arbitrate the "gateway" questions of the arbitration agreement's validity, enforceability, or applicability, then a party may compel arbitration based on that agreement. *Id.* at 69, 69 n.1, 71–72. The party opposing arbitration, in turn, must successfully challenge the "gateway" arbitration agreement in order to challenge in court the arbitration agreement covering its substantive claims. *Id.* But whether the parties formed the agreement or clause supporting the motion to compel arbitration is always a question for the court. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106 (10th Cir. 2020) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)).

Motions to compel arbitration proceed similarly to motions for summary judgment. The movant bears the initial burden of establishing the existence of a valid arbitration agreement. *BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1177 (10th Cir. 2017). If the movant does so, the burden shifts to the nonmovant to demonstrate a genuine dispute of material fact over the agreement's validity or enforceability. *Id.* The court must resolve all factual conflicts in favor of

4

the nonmovant, including giving the nonmovant the benefit of all reasonable inferences. *Hancock v. AT&T Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). If no genuine dispute of material fact exists, the court may resolve the motion as a matter of law. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). However, when a genuine dispute does exist, the court must proceed summarily to trial on whether there is a valid and enforceable arbitration agreement. *Id.* While the nonmovant may request limited, expeditious discovery to oppose the motion to compel arbitration, the nonmovant must establish how discovery would assist its opposition. *THI of NM at Hobbs Ctr., LLC v. Spradlin*, 532 F. App'x 813, 819 (10th Cir. 2013) (citation omitted).

## IV.   ANALYSIS

I recommend the Court grant Defendants' motion to compel arbitration, deny Narcisse's motion to compel discovery, and find as moot Narcisse's second motion. Defendants have produced sufficient evidence to authenticate Narcisse's signature on the arbitration agreement, and Narcisse has failed to demonstrate a genuine dispute of material fact regarding the agreement's validity and enforceability. Narcisse's second motion merely restates his arguments from his response to Defendants' motion to compel.

**A.   I Recommend Finding Defendants Established the Parties Formed an Arbitration Agreement as a Matter of Law.**

The parties do not dispute that the arbitration agreement falls under the FAA and covers Narcisse's discrimination claims. *See* [Docs. 20, 22]. Nor do the parties dispute that New Mexico law governs the formation, validity, and enforceability of the agreement. *See* [Doc. 20-1, at 5]. Defendants have produced a copy of the arbitration agreement with Narcisse's electronic signature. *Id.* at 3–6. The agreement includes capitalized, bolded language that a party's signing means they have entered the arbitration agreement voluntarily and understood all its terms. *Id.* at 6. And consideration is established by the offer of employment and mutuality of arbitration obligations.

*Id.* at 3–6, 14. Therefore, the only issues are whether the electronic signature is verifiable and whether the arbitration agreement is enforceable under New Mexico law.

I recommend finding that there is no genuine dispute of fact regarding the authenticity of the arbitration agreement and Narcisse's signature thereon. The Rey affidavit establishes the arbitration agreement is a required part of Virgin Galactic's standard online onboarding process for spaceport employees. *Id.* at 43–46. The affidavit states that the electronic signature software is provided by a third-party, preventing alterations by Virgin Galactic. *Id.* at 44. Defendants also produced emails with Narcisse during the hiring process directing him to execute all of Virgin Galactic's onboarding documents. *Id.* at 50–54. The Court has previously held similar evidence authenticated an arbitration agreement. *Walker v. Dillard's Inc.*, No. 17-cv-00657, 2019 WL 1283001, at *3 (D.N.M. Mar. 20, 2019). In the same decision, the Court rejected that a lack of memory of signing could establish a genuine dispute of fact. *Id.*

Narcisse asserts the signature is fraudulent because he did not begin onboarding with Virgin Galactic until August 29, 2022, six days after the date of the electronic signature. [Doc. 22, at 3]. In addition, Narcisse argues that New Mexico law requires Virgin Galactic to verify his electronic signature with specific types of metadata. *Id.* at 2. I recommend concluding neither argument is persuasive. Narcisse's evidence that he could not have signed the arbitration agreement prior to August 29, 2022, are three emails from Virgin Galactic's human resources department, two of which Virgin Galactic included in its evidence discussed above. The first email, dated July 19, 2022, from "Talent Specialist" Rosa Garcia, states that Narcisse would have to submit and complete several documents prior to his start date. [Doc. 22, at 8–9]. The second email, dated August 23, 2022, from Garcia, states that Narcisse's first day of work would be August 29, 2022, but prior to that date Narcisse would need to complete the online onboarding process and

6

submit direct deposit information and Federal I9 documents. *Id.* at 10. Rather than support Narcisse's assertion that he could not have completed his onboarding until his first day on the job, the emails show he had access to the Virgin Galactic's online onboarding process by August 23rd and was required to complete it prior to August 29th. The third email, dated August 24, 2022, from "People Generalist" Annabel Flores, lays out his agenda for his first two days of work. *Id.* at 11–12. The email reiterates Narcisse should complete his onboarding "if [he has] not already." *Id.* at 12. Interpreting these emails in the light most favorable to Narcisse, they still fail to support Narcisse's assertion that he could not have signed the arbitration agreement before August 29.

Narcisse also asserts the arbitration agreement must be fraudulent since the signatures of Rose-Smith on his employment offer letter and the arbitration agreement are not identical. *Id.* at 3. This assertion is baseless. The offer letter used a DocuSign function that rendered both Narcisse's and Rose-Smith's electronic signatures in the same font. *See* [Doc. 20-1, at 15]. And Narcisse does not suggest the offer letter or his signature on it are fraudulent.

Regarding the metadata Narcisse argues is required to authenticate his signature, his statement of New Mexico law is incorrect. New Mexico statute allows a party to prove an electronic signature is attributable to a party in "*any manner*." NMSA 1978 § 14-16-9(a) (emphasis added). As discussed above, Defendants have produced sufficient evidence to authenticate Narcisse's signature. *Walker*, 2019 WL 1283001, at *3. For the same reason, Narcisse cannot justify compelling discovery on this metadata; he offers no sound basis to challenge the electronic signature's authenticity factually or legally other than his lack of recollection. *See Spradlin*, 532 F. App'x at 819.

**B.** **I Recommend Finding Narcisse Has Failed as a Matter of Law to Show the Arbitration Agreement Is Invalid or Unenforceable Under New Mexico Law.**

Narcisse argues the arbitration agreement is invalid and unenforceable for three additional reasons: (1) Virgin Galactic's representative improperly signed the arbitration agreement in 2019, three years before Narcisse's hiring; (2) the arbitration agreement is unconscionable for lack of "fairness and mutuality"; and (3) Defendants waived their right to arbitrate by rejecting the EEOC's offer to mediate settlement discussions. [Doc. 22, at 2–3]. I recommend finding that none of these arguments are persuasive.

First, the fact that Rose-Smith's signature to the arbitration agreement is dated 2019 is immaterial. Virgin Galactic offered the arbitration agreement to Narcisse in 2022, Rose-Smith was still an employee and representative of Virgin Galactic at the time,[2] and the agreement expressly states Narcisse and Virgin Galactic are the contracting parties. [Doc. 20-1, at 3–6, 15]. New Mexico law recognizes the formation of a contract once a party places the last signature. *State Farm Mut. Ins. Co. v. Conyers*, 1989-NMSC-071, ¶ 15, 784 P.2d 986, 991.[3] Narcisse does not cite, nor could I find, a New Mexico decision invalidating a contract because the offeror signed it before offering the contract to the offeree. *Cf. Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1266 (11th Cir. 2017) (under Georgia law, employer's practice of pre-signing arbitration agreements for employees did not render them unenforceable).

Second, Narcisse's substantive unconscionability argument is conclusory and may be summarily rejected. *See State ex rel. State Highway & Transp. Dep't v. Garley*, 1991-NMSC-008, ¶¶ 33, 35, 806 P.2d 32, 39–40. Regardless, the arbitration agreement does not contain terms which

---

[2] I note that Rose-Smith's position and job description in Virgin Galactic may have changed between 2019 and 2022 based on the difference in her titles. [Doc. 20-1, at 6, 15]. But Narcisse does not argue nor could I find law suggesting such a change would render the arbitration agreement invalid given Rose-Smith could act on behalf of Virgin Galactic in both 2019 and 2022.

[3] Narcisse also asserts the arbitration agreement is unenforceable because Virgin Galactic is not listed with the American Arbitration Association's registry and the agreement lists the wrong phone number for the Association. [Doc. 22, at 2]. I recommend these arguments may be summarily rejected since Narcisse offers no basis in law or fact for why they invalidate the arbitration agreement.

are "illegal, contrary to public policy, or grossly unfair." *See id.* at ¶ 30, p. 39. The agreement does not require Narcisse to forfeit any substantive claims under applicable state or federal law. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). In addition, Narcisse reciprocally enjoys every right or privilege held by Defendants under the agreement except one. [Doc. 20-1, at 3–6]. Virgin Galactic possess an exclusive right under the agreement to modify its terms. *Id.* A modification clause can invalidate an arbitration agreement if it creates "illusory" consideration. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002). If a modification clause in an arbitration agreement for at-will employment is so broad that it grants "unfettered right" to one party to alter or forgo its obligations, it cannot be enforced under the FAA. *Id.* However, here Virgin Galactic had to give thirty days' notice of changes, could not retroactively apply them, and could not prevent Narcisse from ending his employment if he disagreed with the changes. [Doc. 20-1, at 5]. Thus, the modification clause does not render the agreement unenforceable. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 478 (10th Cir. 2006).

Third, Defendants decision to forego EEOC mediation does not support an inference of waiver. *See BOSC*, 853 F.3d at 1170 (discussing factors for waiver of arbitration inferred from conduct). Acting consistently with their right, Defendants passed on mediation in favor of private arbitration. Therefore, I recommend concluding that the arbitration agreement is valid and enforceable so the Court should stay the case and compel the parties to engage in arbitration pursuant to the FAA. 9 U.S.C. § 3.

## C.     I Recommend the Court Find Narcisse's Second Motion to Be Moot.

Finally, I recommend the Court treat Narcisse's second motion as an unapproved surreply and dismiss it as moot. The motion merely restates the arguments in his response to Defendants' motion to compel arbitration. *See* [Doc. 30, at 1–2].

## V.     CONCLUSION AND RECOMMENDATIONS

9

For the reasons above, I RECOMMEND the Court GRANT Defendants' motion to compel arbitration [Doc. 20], DENY Narcisse's motion to compel discovery [Doc. 24], and FIND AS MOOT Narcisse's second motion [Doc. 30].

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**